
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

IN THE MATTER OF THE SEARCH OF )
SEARCH WARRANT AUTHORIZING )    Case No. 3:23-MJ-1081
THE RELEASE OF HISTORICAL CELL- )
SITE AND REAL-TIME GEO-LOCATION )
INFORMATION ASSOCIATED WITH )      Filed Under Seal
AT&T TELEPHONE NUMBER )
865-851-1521 )

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Alexander Alfonso, a Task Force Officer with the Federal Bureau of Investigation

("FBI"), and being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule

of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for authorization for real-time

geolocation data about the location of, as well as historical location and account data regarding the

cellular telephone bearing the number 865-851-1521 ("TARGET PHONE") which is believed to

be used by Tony Custacio Amador-Certeno ("AMADOR"). It is currently unknown who TARGET

PHONE is subscribed to. TARGET PHONE is serviced by AT&T Mobility (AT&T).

2.      Because this warrant seeks the prospective collection of information, including cell-site

location information, that may fall within the statutory definitions of information collected by a

"pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant

is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested

warrant therefore includes all the information required to be included in an order pursuant to that

statute. *See* 18 U.S.C. § 3123(b)(1).

1

3.     I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

4.     I am a Task Force Officer with the Federal Bureau of Investigation and have been since 2022. I am assigned to the FBI Knoxville Field Office's Transnational Organized Crime West Task Force. I am also a Detective for the Sevier County Sheriff's Office and have been for approximately seven years. During that time, I participated in the investigations of persons suspected of various violations of state law. Those investigations utilized seizure warrants, search warrants, and arrest warrants. I have received training in and conducted investigations into controlled-substance distribution. I have experience in drug-trafficking investigations including visual surveillance, witness interviews, search warrant executions, the use of cooperating witnesses, interviewing confidential human sources ("CHS"), seizure of drug evidence, and controlled purchases of drug evidence. Through training and experience I'm familiar with the habits, practices, methods, and general behavior of criminal groups engaged in organized criminal activity.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a District Court of the United States that has jurisdiction over the offense(s) being investigated.

2

## PROBABLE CAUSE

7.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846, and have been committed, are being committed, and/or will be committed by the user of the TARGET PHONE, and others, known and unknown, as explained below.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and/or will lead to the identification of individuals who are engaged in the commission of these offenses. In summary, Law enforcement knows for a fact that AMADOR uses TARGET PHONE to conduct illegal activities including distributing cocaine in the Eastern District of Tennessee.

7.     Law enforcement has been investigating the illegal activities associated with AMADOR and his drug trafficking organization ("DTO") for the last three months and prior. Law enforcement has used different types of investigative techniques including but not limited to pen register/trap and trace devices and physical surveillance.

8.     This investigation outlined herein involves a CHS (referred to hereinafter as "CHS"). CHS is a confidential source and has interacted directly with investigators involved in this investigation. CHS has been cooperating with law enforcement for less than one year and is currently motivated by the possibility of receiving leniency for pending federal charges. CHS has been interviewed by law enforcement.  Interviews were in-person, the interviewing agents are fully aware of CHS's identity, and CHS did not attempt to obscure his or her identity in any manner. The requirement that CHS provide only truthful information was stressed to CHS at the beginning of his/her cooperation. To date, no information received from CHS is believed to be dishonest or unreliable. For these reasons, and as demonstrated herein, your Affiant believes information received from CHS to be reliable and true and accurate to the best of my knowledge.  CHS is familiar with

3

AMADOR and his affiliation with narcotics trafficking. CHS has provided information concerning AMADOR. CHS has direct access to AMADOR via the TARGET PHONE. The information provided by the CHS that could be corroborated has been.

9.     CHS provided TARGET PHONE to law enforcement and described AMADOR as a drug dealer who lived in Sevier County, TN. CHS was shown a photo of AMADOR and confirmed the individual in the photo was AMADOR and the user of the TARGET PHONE.

CHS has sent text messages and made calls to TARGET PHONE to set up drug buys on law enforcement's behalf.

10.     On March 20, 2023, at 1:55pm CHS contacted AMADOR via TARGET PHONE to arrange a controlled purchase of approximately seven grams of cocaine. CHS requested to meet AMADOR for the purchase. AMADOR agreed to meet CHS at 308 Parkway in Sevierville, TN to sell CHS the substance for a total of $500. At approximately 2:13pm, AMADOR was observed by law enforcement arriving at the location driving a gray Toyota Camry with TN tag 213BFWF. CHS walked to AMADOR's vehicle and made contact with AMADOR through his passenger side window. CHS exchanged the drug funds for the cocaine completing the transaction with AMADOR. AMADOR then drove away from the location. Law enforcement surveilled this deal and the deal was recorded using audio and video equipment. CHS was surveilled back to a meeting location where law enforcement searched CHS and CHS's vehicle. Law enforcement then took possession of the cocaine from CHS. The suspected cocaine weighed approximately six grams. A presumptive test on the substance resulted in a positive indication of cocaine. This deal and phone call occurred in the Eastern District of Tennessee.

11.     On May 1, 2023, I, along with Detective Milliron met with CHS. CHS placed a

4

controlled recorded call to AMADOR. CHS placed the call to TARGET PHONE. CHS spoke to AMADOR and asked him if CHS could make a purchase of two 8-balls (cocaine) later in the week. AMADOR agreed to sell the substance to CHS and gave CHS the price of $250 per 8-ball.

## TECHNICAL INFORMATION

12.     In my training and experience, I have learned that many wireless cellular service providers provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

13.     In my training and experience, I have learned wireless cell phone service providers provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also

known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

13.     Based on my training and experience, I know that wireless providers can collect cell-site data. I also know that wireless providers such as wireless providers typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes Based on my training and experience, I know that wireless providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the user or users of the TARGET PHONE and may assist in the identification of co-conspirators and/or victims.

6

## MANNER OF EXECUTION

14.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

15.     To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the TARGET PHONE or receiving signals from nearby cellular devices, including the TARGET PHONE. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the TARGET PHONE and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the TARGET PHONE and use that information to determine the TARGET PHONE's location, even if it is located inside a house, apartment, or other building.

16.     The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. However, the use of such investigative device will not affect the TARGET PHONE or any non-target devices' ability to contact the emergency 911 system. In order to connect with the TARGET PHONE, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the TARGET PHONE, and law enforcement

will limit collection of information from devices other than the TARGET PHONE. To the extent that any information from a cellular device other than the TARGET PHONE is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the TARGET PHONE from all other cellular devices.

## AUTHORIZATION REQUEST

17.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rules of Criminal Procedure 41 and 18 U.S.C. § 2703(c). The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123. The monitoring of the aforementioned device will not exceed thirty days.

18.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying the TARGET PHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates; and flee from prosecution. This warrant does not authorize the collection of the contents of any wire or electronic communications.

19.     I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in

8

Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the TARGET PHONE on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance

20.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the TARGET PHONE outside of daytime hours.

21.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be **sealed** until further order of the Court. These documents discuss an ongoing criminal investigation. Disclosure of this warrant could cause AMADOR to destroy evidence and hamper law enforcement's efforts to apprehend him. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

22.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET PHONE outside of daytime hours.

Respectfully submitted,

_____
ALEXANDER ALFONSO
TASK FORCE OFFICER, FBI

Subscribed and sworn to before me on May 9th, 2023.

_____
DEBRA C. POPLIN
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

### Particular Items to be Searched

The cellular telephone assigned call number 865-851-1521 (TARGET PHONE), whose service provider is AT&T, and is being used by Tony Custacio Amador-Certeno. It is ordered that any Wireless Provider that is associated with 865-851-1521 furnish the information outlined in Attachment B.

Information about the location of the TARGET PHONE that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Items to be Seized

All information, including historic, current, and future data, about the TARGET PHONE and location described in Attachment A for a period of thirty days prior to and through thirty days after the issuance of this search warrant, both day and night. Information about the TARGET PHONE includes all subscriber information, MIN/ESN/IMSI/MSID and billing information, call logs for both received and transmitted phone numbers, time at which calls were placed, duration of the calls, SMS/MMS data including numbers to which messages were sent to, cell site activations, precision tracking through the use of GPS (not to exceed thirty days, beginning on the date of Judicial signature), per call measurement data (PCMD), RTT, NELOS and other location data calculated by the provider. "Information about the location of the TARGET PHONE" also includes all available E-911 Phase II data, GPS data, latitude-longitude data, Per Call Measurement data (PCMD) and other precise location information, as well as all current and historical call detail records and cell site information, to include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the TARGET PHONE on AT&T's network or with such other reference points as may be reasonably available, and at

such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance. As so defined, this search warrant, as herein ordered by the Court, orders the authorization and implementation of a pen register and trap ad trace device, for the noted time period, pursuant to Rule 41 of the Federal Rules of Criminal Procedure and Title 18, United States Code, §§ 2510, 2703, 3122, and 3123. Said pen register and trap and trace implementation shall be implemented contemporaneously with any other provisions of this warrant and shall not only apply to the current denoted number, but to any number associated with the same ESN or IMEI of the target device.

Pursuant to an investigation of AMADOR for a violation of Title 21, United States Code, Section 846, 841(a)(1), this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining radio signals emitted by the TARGET PHONE for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and radio signals emitted by the TARGET PHONE in response to radio signals sent to the cellular device by the officers for a period of thirty days, during all times of day and night. This warrant does not authorize the seizure of any tangible property or the collection of the contents of any wire or electronic communications. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).